IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

---

| | |
|---|---|
| SIEMENS ENERGY, INC., | Case No. |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| MARKEL INSURANCE COMPANY | |
| Serve: CT Corporation System<br>Registered Agent<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060 | |
| Defendant. | |

---

Plaintiff Siemens Energy, Inc. ("SEI"), by and through its undersigned attorneys, as and for its Complaint against defendant Markel Insurance Company ("Markel"), alleges as follows:

## NATURE OF THE ACTION

1. This dispute arises out of a construction project to provide energy saving upgrades to a power plant located at the U.S. Department of Energy's National Nuclear Security Administration Los Alamos National Laboratory facility in New Mexico. SEI was hired to design and construct steam and power plant modifications for the project. In 2019, SEI subcontracted certain design and construction work to Lauren Engineers & Constructors, Inc. ("Lauren"). Pursuant to the subcontract between SEI and Lauren, Lauren provided SEI with performance and payment bonds issued by Markel as surety. In March 2021, Lauren fell into severe financial distress and demobilized from the project site. In April 2021, Lauren filed for

Chapter 7 bankruptcy liquidation. SEI provided timely notice to Markel and satisfied all conditions precedent to trigger Markel's obligations under Lauren's performance and payment bonds. However, Markel refused in bad faith to comply with its obligations under the bonds, which has forced SEI to incur significant delays and costs to replace Lauren on the Project – costs that should be borne by Markel. SEI is suing Markel to enforce the performance and payment bonds and recover damages incurred due to Markel's breaches of the bonds and its breach of the covenant of good faith and fair dealing.

## PARTIES

2. SEI is a Delaware corporation with its principal place of business in the State of Florida.

3. Markel Insurance Company ("Markel") is an Illinois corporation with its principal place of business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because SEI and Markel are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue in this Court is proper pursuant 28 USC § 1391(b)(1) because Markel resides in this District. Markel also resides in this Division because its contacts in this Division would be sufficient to subject it to personal jurisdiction here.

## BACKGROUND

### The Subcontract and the Surety Bonds

6. SEI contracted with Siemens Government Technologies, Inc. to provide power generation equipment and construction services for an energy efficiency and modernization project at the U.S. Department of Energy's National Nuclear Security Administration Los Alamos National Laboratory in New Mexico ("Project").

7. By contract dated February 22, 2019, SEI hired Lauren to provide certain design and construction services for the Project under the Engineer-Construct Agreement for the US 1485 Los Alamos National Laboratory (LANL) Phase 1 Steam Plant Replacement Project ("Subcontract").

8. The Subcontract required that Lauren provide SEI with payment and performance bonds.

9. In accordance with the Subcontract, Lauren provided SEI with two bonds issued by Markel: (1) Performance Bond No. 4421055, dated February 28, 2019, and executed by Lauren, as principal, and Markel, as surety, in the amount of $13,600,000 for the benefit of SEI, as "Owner" ("Performance Bond"), and (2) Payment Bond No. 4421055, dated February 28, 2019, and executed by Lauren, as principal, and Markel, as surety, in the amount of $13,600,000 for the benefit of SEI, as "Owner" ("Payment Bond"). A copy of the Performance Bond is attached as **Exhibit "A,"** and a copy of the Payment Bond is attached as **Exhibit "B."**

10. Under the Performance Bond, Markel is obligated to secure Lauren's full performance of its obligations under the Subcontract.

11. Under the Payment Bond, Markel is obligated to secure Lauren's payment obligations on the Project.

12. During the course of Lauren's work on the Project, SEI repeatedly paid Lauren to increase the penal sum of each Bond to account for increases in the Subcontract price in order to ensure that SEI was fully protected by the Bonds.

<u>SEI submits claim to Markel under the Performance Bond</u>

13. In March 2021, Lauren's bank swept its operating accounts, leaving it with insufficient funds to meet payroll, and Lauren demobilized from the Project site.

14. In accordance with Section 3.1 of the Performance Bond, on March 12, 2021, SEI sent notice to Lauren and Markel that SEI was considering declaring Lauren in default of its obligations under the Subcontract.

15. On March 23, 2021, SEI declared Lauren in default of the Subcontract and provided notice of same to Markel.

16. In March and April 2021, Lauren (with Markel's assistance) was attempting to sell its assets to another engineering firm. If the sale closed, the other engineering firm would complete the Project in place of Lauren.

17. Markel requested that SEI agree not to terminate the Subcontract to allow additional time for the Lauren sale to close. SEI agreed to forebear from termination until April 9, 2021.

18. Lauren was not sold to the engineering firm.

19. On April 8, 2021, Lauren filed for Chapter 7 bankruptcy liquidation.

20. On May 19, 2021, SEI agreed to pay the balance of the Contract Price[1] in accordance with the terms of the Subcontract to Markel or a contractor selected to complete Lauren's work.

21. By operation of law, Lauren's bankruptcy estate rejected the Subcontract.

---

[1] The term "Contract Price" is defined in Section 14.1 of the Performance Bond.

22. On June 8, 2021, SEI terminated the Subcontract and notified Markel of the termination.

23. On June 8, 2021, SEI requested that Markel confirm its obligations under the Performance Bond and identify which of the actions under Section 5 of the Performance Bond it would take to fulfill its Performance Bond obligations.

24. On June 14, 2021, Markel refused to comply with its obligations under the Performance Bond.

25. On August 24, 2021, SEI submitted another request to Markel demanding that it perform its obligations under the Performance Bond, but Markel failed to do so.

SEI submits claim to Markel under the Payment Bond

26. In March 2021, SEI received a demand for payment and notice of intent to file a lien from Big Bend Services, LLC ("Big Bend"), one of Lauren's subcontractors on the Project. Big Bend asserted that Lauren owed it $105,300 for its work on the Project and demanded payment from SEI of that amount. It also advised that it would file a lien on the Project to secure payment of the claimed amount.

27. On March 31, 2021, SEI provided written notice to Markel of Big Bend's demand and notice of lien.

28. Markel neither responded to the notice nor honored its obligations under the Payment Bond.

29. On August 24, 2021, SEI provided notice to Markel of a claim by Sierra Canyon Construction, LLC ("Sierra"), another of Lauren's subcontractors on the Project.

30. Once again, Markel failed to honor its obligations under the Payment Bond.

## COUNT I – DECLARATORY JUDGMENT
### (Performance Bond)

31. SEI incorporates the preceding paragraphs as if fully set forth herein.

32. Section 3 of the Performance Bond states:

If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

- .1 the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;
- .2 the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety;

    and
- .3 the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

33. As detailed above, SEI complied with the conditions in Section 3 of the

Performance Bond.

34. SEI is entitled to a judgment declaring that SEI satisfied the conditions in Section 3

of the Performance Bond.

35. The dispute presented in this count is a present and justiciable claim.

## COUNT II – DECLARATORY JUDGMENT
### (Payment Bond)

36. SEI incorporates the preceding paragraphs as if fully set forth herein.

37. Section 3 of the Payment Bond states:

> If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

38. As detailed above, SEI complied with the conditions in Section 3 of the Payment Bond for the Big Bend and Sierra claims.

39. SEI is entitled to a judgment declaring that SEI satisfied the conditions in Section 3 of the Payment Bond.

40. The dispute presented in this count is a present and justiciable claim.

## COUNT III–BREACH OF CONTRACT
### (Breach of Performance Bond)

41. SEI incorporates the preceding paragraphs as if fully set forth herein.

42. Section 5 of the Performance Bond provides that "When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of" the actions enumerated in Section 5 to secure the performance and completion of the Subcontract.

43. Section 6 of the Performance Bond states:

> If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part,

without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

44. Section 7 of the Performance Bond provides that Markel is obligated to pay SEI for, *inter alia*, "additional legal, design professional and delay costs resulting from [Lauren]'s Default, and resulting from the actions or failure to act of [Markel] under Section 5," as well as "liquidated damages."

45. SEI complied with all of its obligations under the Performance Bond, including all conditions precedent to trigger Markel's obligations under the Performance Bond.

46. Markel wrongfully denied SEI's claim and refused to take any of the actions listed in Section 5 of the Performance Bond.

47. Markel's wrongful denial of SEI's claim and wrongful refusal to comply with its obligations are a material breach of the Performance Bond.

48. Markel's material breach of the Performance Bond has already caused SEI damages in excess of $12 million, which include, *inter alia*, the cost of hiring contractors to replace Lauren. Such damages are continuing to accrue and will exceed the Performance Bond's penal sum. The total damages will be determined at trial.

49. Markel is also obligated to pay SEI's attorney's fees, delay costs, liquidated damages, and other expenses incurred due to Lauren's default and Markel's breach of the Performance Bond.

### COUNT IV–BREACH OF CONTRACT
**(Breach of Payment Bond)**

50. SEI incorporates the preceding paragraphs as if fully set forth herein.

51. Section 4 of the Payment Bond states: "When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit."

52. SEI complied with all of its obligations under the Payment Bond, including all conditions precedent to trigger Markel's obligations under the Payment Bond with respect to the Big Bend and Sierra claims.

53. Markel failed to accept SEI's tender for both claims.

54. Markel's wrongful refusal to comply with its obligations are a material breach of the Payment Bond.

55. Markel's material breach of the Payment Bond has damaged SEI, which has been forced to incur expense in connection with the claims, and such expenses are continuing to accrue. SEI's damages will be determined at trial.

### COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

56. SEI incorporates the preceding paragraphs as if fully set forth herein.

57. Every contract imposes a duty of good faith and fair dealing in its performance.

58. Markel owes SEI a duty of good faith and fair dealing in its performance under the Performance and Payment Bonds.

59. Markel breached the covenant of good faith and fair dealing inherent in the Performance and Payment Bonds through its bad faith handling of SEI's claims against the Bonds.

60. The following are several examples of Markel's bad faith conduct:

   a. when SEI provided notice under Section 3.3 of the Performance Bond, Markel knowingly and intentionally claimed, in bad faith, that the notice

9

        did not comply with Section 3.3 even though it clearly satisfied that provision;

    b. Markel knowingly and intentionally claimed, in bad faith, that SEI committed an "Owner Default" without any basis to try to avoid its obligations under the Bonds; and

    c. Markel knowingly and intentionally demanded, in bad faith, that SEI comply with various requests for information before Markel would consider SEI's claims even though SEI had already satisfied the conditions precedent triggering Markel's obligations under the Performance Bond.

61. Markel took these actions with deliberate disregard for SEI's contractual rights in order to deprive SEI of the benefits of the Bonds.

62. A special relationship exists between SEI, as obligee, and Markel, as the surety, under each Bond.

63. Markel's breach of the covenant of good faith and fair dealing has damaged SEI in an amount to be determined at trial.

64. As part of its damages, SEI is entitled to an award of punitive damages.

    WHEREFORE, SEI demands judgment:

    a. On its First Count, for a judgment declaring that SEI satisfied the conditions in Section 3 of the Performance Bond;

    b. On its Second Count, for a judgment declaring that SEI satisfied the conditions in Section 3 of the Payment Bond;

    c. On its Third Count, awarding SEI judgment against Markel in an amount to be determined at trial that is in excess of $12 million, as well as SEI's attorney's fees and costs;

d. On its Fourth Count, awarding SEI judgment against Markel in an amount to be determined at trial;

e. On its Fifth Count, awarding SEI judgment against Markel in an amount to be determined at trial, including punitive damages;

f. Pre-and post-judgment interest; and

g. Any other relief that the Court deems just and proper.

Dated: September 1, 2021

By: /s/ Laura May Hooe_____
Laura May Hooe, Esq. (VSB No. 84170)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone:  (804) 421-6250
Facsimile:   (804) 421-6251
lmayhooe@moranreevesconn.com

   -and-

Robert L. Joyce (*pro hac vice* to be filed)
Eric J. Goldberg (*pro hac vice* to be filed)
LITTLETON PARK JOYCE UGHETTA & KELLY LLP
39 Broadway, 29th Floor
New York, NY 10006
Telephone: (212) 404-5777
Facsimile: (212) 232-0088
robert.joyce@littletonpark.com
Eric.Goldberg@littletonpark.com

*Attorneys for Plaintiff Siemens Energy, Inc.*